# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| BRIAN TIMOTHY DANE, § | |
| § | |
| Plaintiff, § | CIVIL ACTION NO. 4:20-CV-00323-CAN |
| § | |
| v. § | |
| § | |
| COMMISSIONER, SSA, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for social security benefits. After reviewing the Briefs submitted, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision is **REMANDED.**

## RELEVANT PROCEDURAL HISTORY AND MEDICAL EVIDENCE SUMMARY

On November 22, 2017, Brian Timothy Dane ("Plaintiff") filed his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("SSA") [TR 10, 207-211, 244]. Plaintiff asserts an onset of disability date of January 25, 2016 [TR 35-37].[1] Plaintiff was born on May 10, 1972, making him forty-three (43) years of age at the time of his alleged onset of the disability and forty-seven (47) on the date of decision [TR 23, 39]. His age classification at all times was that of a "younger person." *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). On March 28, 2018, Plaintiff's application was initially denied by notice [TR 129-34], and upon reconsideration on August 28, 2018, it was again denied [TR 139-42]. Plaintiff requested an administrative hearing ("Hearing"),

---

[1] Plaintiff amended his alleged disability onset date from December 31, 2013, to January 25, 2016 [TR 10].

which was held before an Administrative Law Judge ("ALJ") on July 22, 2019 [TR 10]. At Hearing, Plaintiff and a vocational expert ("VE") presented testimony [TR 31-65]. Plaintiff was represented by counsel at Hearing [TR 34]. On August 21, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled at step five, denying his application for benefits [TR 23-25]. After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation [TR 11-25]. At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2018, and that he had not engaged in substantial gainful activity since January 25, 2016, the alleged onset date [TR 12]. At step two, the ALJ found that Plaintiff had severe impairments of myxopapillary ependymoma status-post removal and laminectomy; degenerative disc disease of the lumbar and cervical spine; lumbar radiculopathy; edema; neurogenic bladder; and obesity, citing 20 C.F.R. §§ 404.1520(c) and 416.920(c) [TR 13]. The ALJ determined that any of Plaintiff's remaining impairments were not severe as they "did not interfere with the claimant's ability to work" [TR 17]. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) [TR 17]. At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), specifically:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except he can lift and/or carry and push and/or pullup to 10 pounds occasionally and less than 10 pounds frequently. He can stand and/or walk for 2 hours in an 8-hour workday. He can sit for about 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He requires the use of a handheld assistive device, such as a cane, for ambulation.

[TR 17-18]. The ALJ found Plaintiff is "unable to perform his past relevant work as a warehouse worker, cleaner and preparer, or electronics worker," based on testimony by the VE and the RFC as determined by the ALJ [TR 23]. At step five, the ALJ determined Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," considering his "age, education, work experience, and residual functional capacity" [TR 24]. Based on testimony from the VE, the ALJ found representative occupations exist that Plaintiff could perform based on the limitations detailed in the RFC, such as food and beverage order clerk, addresser, and callout operator [TR 24]. Thus, the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act, from January 25, 2016, through the date of the ALJ's decision [TR 24].[2]

On September 13, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 204-06]. The Appeals Council denied Plaintiff's request on August 21, 2019, making the decision of the ALJ the final decision of the Commissioner [TR 1]. On April 16, 2020, Plaintiff filed the instant action [Dkt. 1]. On September 1, 2020, the Administrative Record was received from the Social Security Administration [Dkt. 15]. Plaintiff filed his Brief on October 1, 2020 [Dkt. 17], the Commissioner filed its Brief in Support of the Commissioner's Decision on November 23, 2020 [Dkt. 18], and on December 3, 2020, Plaintiff filed his Reply [Dkt. 19].

---

[2] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. Id.

Plaintiff's appeal challenges the ALJ's failure to consider incontinence-related limitations in formulating Plaintiff's RFC. As such, the Court summarizes the relevant medical evidence and hearing testimony on this issue. Plaintiff's medical history is admittedly limited.

*Relevant Medical Records*

The records presented for consideration reflect that on January 4, 2016, Plaintiff reported to Dr. Chester Graham at Urology Clinics of North Texas with frequent urination, nocturia, and neuromuscular dysfunction of the bladder [TR 401]. Dr. Graham's history of Plaintiff's present illness notes the following symptoms: dysuria, urinary frequency (every 1 hour), urinary hesitancy, incomplete emptying, nocturia (3 times per night), slow stream, strain to urinate, and urgency [TR 400]. On January 13, 2016, Plaintiff underwent a magnetic resonance image ("MRI") of his lumbar spine, revealing a large enhancing mass in the region of the lower spinal cord [TR 409]. On January 25, 2016, Plaintiff reported to the Emergency Department at Texas Health Presbyterian Hospital, Allen, complaining of increasing lower back pain with frequent urination and incontinence [TR 406]. Dr. Justin Neff, at the emergency department, took a six-month history from Plaintiff, indicating urinary frequency resulting in ninety (90) minute restroom breaks, intermittent saddle anesthesia, and urinary incontinence requiring Plaintiff to wear Depends [TR 406]. Dr. Neff diagnosed Plaintiff with incontinence [TR 407]. On January 25, 2016, medical staff in the emergency room, a result of the tumor or large mass in his lower spinal cord, transferred Plaintiff to Presbyterian Hospital of Dallas [TR 409, 416]. On January 28, 2016, Plaintiff underwent a laminectomy to remove a lesion on his spine, and his surgeon Dr. Jason Taub indicated Plaintiff had bladder dysfunction both pre- and post-operation [TR 436-37]. On February 10, 2016, Plaintiff was discharged [TR 413]. At discharge, urologist Dr. Dan French sent Plaintiff home with catheters and instructed him and his mother on their use; hope was

expressed that Plaintiff might regain the ability to void, but the degree of improvement was uncertain at the time [TR 594].

On April 22, 2016, Plaintiff sought post-operative follow up care, including an MRI at the request of Dr. Taub [TR 479]. The MRI revealed Plaintiff was retaining fluid at the site of the mass and his descending nerve roots were displaced [TR 479-81]. On May 6, 2016, Plaintiff presented to Dr. Taub for his post-operative visit, where Plaintiff was instructed to follow up with an MRI in one year [TR 462-64]. On June 15, 2016, Plaintiff reported to Dr. French at Urology Clinics of North Texas [TR 491]. Dr. French assessed Plaintiff to have neuromuscular dysfunction of bladder and frequency of micturition [TR 491]. Additionally, Dr. French noted he discussed "UDS, Intersim or botox for bladder," but Plaintiff indicated he could not afford those treatments [TR 491]. On September 6, 2016, Plaintiff presented to Dr. Astrid Gutsmann, at Urology Clinics of North Texas, who recorded symptoms of "severe" urinary frequency, more than three times per hour [TR 514]. Dr. Gustmann also completed a medical release/physician's statement that Plaintiff was permanently disabled by his ependymoma [TR 517-18]. On May 5, 2017, Plaintiff reported for an MRI referred by Dr. Taub for Plaintiff's one-year post-operative follow up [TR 476-78]. Dr. Bryan Quarles, M.D., completed the impressions for the MRI, indicating fluid intensity and possible cyst at the site where the mass was removed from Plaintiff's lumbar region, and the descending nerve roots were displaced in the region [TR 476-78].

On January 30, 2018. Plaintiff's mother, with whom Plaintiff resides, stated in a Function Report that Plaintiff "urinates almost every hour" of the day [TR 253]. Her report suggests Plaintiff's bladder problem began around the time the tumor around Plaintiff's spinal cord was removed [TR 253].

*Consultative Examiner—Dr. Katkuri*

In response to Plaintiff's disability application, state agency medical consultant Dr. Scott Spoor referred Plaintiff to Dr. Shobha Katkuri for a consultative examination due to insufficient evidence to complete the disability determination [TR 16, 684-94]. On February 28, 2018, Plaintiff visited Dr. Katkuri, who recorded his history of present illnesses: soreness of joints, difficulty sleeping, frequent urination, stiffness, an inability to move, and constant fatigue [TR 685]. Dr. Katkuri performed a physical on Plaintiff that did not include a genitourinary examination, nor did he evaluate Plaintiff's incontinence, described as related to the tumor removal near his spine, but he did order new lumbar x-rays [TR 685-90]. Dr. Katkuri further did not evaluate Plaintiff for work-related limitations [TR 687].

*Consultative Examiner—Dr. Shade*

On April 23, 2019, Plaintiff presented to Dr. Ronnie Shade, a board-certified orthopedic surgeon and Certified Independent Medical Examiner, for a second consultative examination at the behest of Plaintiff's counsel [TR 778, 780]. Dr. Shade physically examined Plaintiff and reviewed his recent diagnostics, specifically the March 1, 2018, lumbar x-ray ordered by Dr. Katkuri; the May 5, 2017, MRI of Plaintiff's lumbar region; and the February 2, 2016 MRI of the cervical spine [TR 778-79]. Dr. Shade recorded the following assessments from the physical examination: lumbar spinal stenosis, ependymoma, neuromuscular dysfunction of the bladder, incompetent bladder, lumbar radiculopathy, lumbar facet spondylitis, lymphedema, thoracolumbar scoliosis, chronic pain syndrome, and cervical spinal stenosis [TR 775, 780]. Dr. Shade advised Plaintiff against prolonged standing, walking, sitting, bending, or stooping [TR 780].

On May 9, 2019, Dr. Shade completed a Medical Source Statement for Plaintiff, where he identified the following medically determinable impairments that have an effect on Plaintiff's

ability to work and that are demonstrated by medically acceptable objective evidence: weakness of lower extremities w/ chronic pain, decreased lumbar range of motion, and incompetent bladder [TR 775]. Dr. Shade indicated that Plaintiff needed to alternate between sitting/standing, take "unscheduled rest breaks" every thirty (30) minutes, and be required to take "excessive restroom breaks throughout the day" [TR 775-76]. Dr. Shade indicated Plaintiff's reported incontinence is reasonably supported by objective clinical findings [TR 776]. Dr. Shade certified his findings were true and accurate, with answers given "based solely on [his] education, training, experience, and review of the medical evidence" [TR 777].

*Plaintiff's Hearing Testimony*

On July 22, 2019, Plaintiff attended the ALJ Hearing in Dallas, Texas, represented by counsel [TR 32]. At Hearing, Plaintiff testified about his functional limitations in the workplace. Plaintiff stated he had most recently worked at St. Jude Medical Center as a cleaner and preparer from 2009 through 2013 [TR 46-47], when he quit his job due to lower back pain [TR 244]. He stated he had difficulty sleeping, walking, and concentrating [TR 48-49], that he needed the assistance of a cane or walker to ambulate [TR 40-41], and that he needed to elevate his legs to prevent swelling in his ankles and feet [TR 54]. Plaintiff testified he could not walk a city block without stopping, could not walk down a hall without a cane, could stand for ten (10) minutes at a time, could sit for up to ninety (90) minutes, could not bend at the waist or reach overhead, and could lift five (5) pounds [TR 55-57]. Plaintiff testified he suffered from urinary incontinence and required hourly bathroom breaks [TR 53]. Plaintiff explained that it affects his sleep: "Well, I can't sleep because I can't get comfortable. I keep having to get up to go to the bathroom" [TR 48]. The ALJ questioned Plaintiff about his incontinence, asking how often he had to go to the restroom. Plaintiff stated, "[u]sually once every hour," and that he occasionally had accidents [TR

53]. He testified that he feared going out into public in case he does not have access to a restroom because he "didn't want to have an accident" [TR 49]. When questioned about the lack of treatment for his impairments, Plaintiff testified he did not follow up with some of the specialists because he did not have health insurance, absent short-term coverage for his hospital bills post-surgery [TR 50-52]. When asked if he had recently seen a urologist, he stated, "No, not since the hospital. We still owe them money. I would like to go back, but they won't take me" [TR 49]. Plaintiff cited his inability to afford rehabilitation and other treatments as a barrier to his recovery.

## STANDARD OF REVIEW

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). It is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985). Judicial inquiry as to whether the ALJ applied the correct legal standard "is a bit more exacting," and the ALJ "generally cannot reject a medical opinion without providing an explanation for that rejection, even if good reasons exist for disregarding the opinion." *Winston v. Berryhill*, 755 F.

App'x 395, 398 (5th Cir. 2018) (citing *Kneeland v. Berryhill*, 850 F.3d 749, 759-61 (5th Cir. 2017) (failure by the ALJ to explain the rejection of a medical opinion justifies a remand)).

Disability insurance is governed by Title II, 42 U.S.C. §§ 404 *et. seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. §§ 1381 *et. seq.*, of the SSA. The law and regulations governing the determination of disability are the same for both DIB and SSI. *Greenspan*, 38 F.3d at 236. The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff presents a single issue for review: whether the ALJ erred in failing to adopt any limitations corresponding to Plaintiff's incontinence in Plaintiff's RFC [Dkt. 17 at 1, 11-14]. Plaintiff argues the ALJ's failure to include limitations related to incontinence renders the ALJ's Determination inconsistent with the Fifth Circuit's decision in *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999) [Dkt. 17 at 12-15].

### *Step Two Finding*

As an initial matter, the Commissioner bizarrely argues that the Court should not reach the issue of whether the ALJ erred in formulating Plaintiff's RFC because the ALJ erred at step two and should never have found Plaintiff's neurogenic bladder to be a severe impairment [Dkt. 18 at 5]. The Commissioner specifically advances the following:

> Dane is aggrieved by the ALJ's RFC assessment. He contends that since the ALJ listed 'neurogenic bladder' as a 'severe' impairment at Step 2, the ALJ erred by not incorporating into the RFC finding some restriction attributable to that condition. The Commissioner acknowledges that the inconsistency between the ALJ's Step 2

> finding and her RFC assessment reflects error on the part of the ALJ, but not as Dane alleges. The Commissioner submits that the error rests instead in the ALJ's inclusion of neurogenic bladder as one of Dane's severe impairments at Step 2—an error that does not warrant reversal.
> Under the regulations, an impairment or combination of impairments is "severe" when it meets the threshold of limiting an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A complete reading of the ALJ's decision shows that, despite her Step 2 determination, the ALJ viewed Dane's neurogenic bladder condition as unlikely to interfere with Danes ability to work.

[Dkt. 18 at 5]. The ALJ's opinion "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see Williams v. Comm'r*, No. 4:20-CV-01499, 2021 WL 3269761, at *3 n.3 (S.D. Tex. July 30, 2021) (rejecting the Commissioner's position on appeal because the argument offered by Commissioner was not expressed by the ALJ, and more importantly, because it was contrary to the ALJ's express finding in the determination). The ALJ explicitly determined Plaintiff's neurogenic bladder to be a severe impairment [TR 13]. "The Fifth Circuit has held that an impairment is not severe 'only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.'" *Tulowiecki v. Comm'r*, No. 2:12CV731, 2014 WL 5342946, at *5 (E.D. Tex. Sept. 30, 2014) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)) "The corollary of *Stone* is that, when an ALJ has determined that an impairment is severe at Step Two, he has found that the impairment limits or potentially limits the claimant's ability to work." *Id.* Plaintiff's claim of incontinence stemming from (or as an associated symptom of) his neurogenic bladder is uncontroverted and the ALJ was obligated to consider its impact on Plaintiff's ability to work in determining the RFC. *See Crowely,* 197 F.3d at 198.

*RFC Determination*

Before reaching step four, the ALJ assesses the claimant's RFC.[3] The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most that a claimant is able to do despite his or her physical and mental limitations. *Id.* The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).

Plaintiff claims the ALJ's RFC assessment is flawed because it does not accommodate Plaintiff's incontinence, specifically a limitation related to frequency of restroom breaks, and such failure is not harmless error because adoption of incontinence limitations would support a different step five outcome [Dkt. 17 at 11-13, 15-16]. As detailed earlier, the medicals records reviewed by the ALJ reflect Plaintiff presented to six different physicians as early as 2016 complaining of incontinence. At Hearing, Plaintiff himself testified "he suffered from urinary incontinence and required hourly bathroom breaks, admitting he has accidents on a couple of occasions" [TR 53]. Plaintiff's mother, with whom Plaintiff resides, stated in a Function Report that Plaintiff "urinates almost every hour" of the day [TR 253]. Additionally, Dr. Shade opined that Plaintiff suffered from incontinence and required "excessive restroom breaks throughout the day" [TR 775-76]. The ALJ has already determined that Plaintiff's neurogenic bladder constitutes a severe impairment, which by definition limits his physical ability to do basic work activities. In discussing the medical evidence, the ALJ noted disagreement with Plaintiff's mother's contention as to Plaintiff's

---

[3] The RFC is then used in both step four and step five to determine whether the claimant is able to do his past work or other available work. *Kneeland v. Berryhill*, 850 F.3d 749 (5th Cir. 2017). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, but at the last step, the burden shifts to the Commissioner. *Leggett*, 67 F.3d at 564.

frequent urination; however, the ALJ did not address Dr. Shade's opinion on Plaintiff's required restroom breaks and gave no explanation for implicitly rejecting this limitation or otherwise excluding such limitation from the RFC.[4] The Court is unaware of any contradicting medical opinion in the record. *See Hooks v. Comm'r*, No. 3:13-CV-454, 2014 WL 4348182, at *7 (E.D. Tenn. Sept. 2, 2014) (citing *McNelis v. Comm'r*, No. 08-12529, 2009 WL 3210713, at *6 (E.D. Mich. Sept. 29, 2009)) (where a claimant alleged a need for frequent bathroom breaks and "the ALJ offered no analysis of the issue," the court is "precluded from engaging in meaningful review and remand [is] warranted); *Green v. Astrue*, No. 3:09-cv-33l, 2010 WL 2901765, at *5-6 (E.D. Tenn. July 2, 2010) ("If as the Commissioner asserts, the ALJ was not convinced that Plaintiff's incontinence seriously impacted her ability to work, then he should have stated as much in his RFC conclusion").

The Commissioner argues the ALJ properly rejected any limitation related to the frequency of Plaintiff's restroom breaks, and/or implicitly included the only necessary limitation, as an "8-hour workday [] customarily includes breaks at approximately 2-hour intervals," and "since these break intervals are presumed, the ALJ need not explicitly incorporate a need for 'breaks' into the RFC finding where customary breaks are sufficient to satisfy the claimant's needs" [Dkt. 18 at 7].[5]

---

[4] The ALJ did discuss Dr. Shade's examination of Plaintiff, drawing attention to the fact that Dr. Shade was engaged as a consultative examiner by Plaintiff's counsel [TR 22]. However, the ALJ further found "such evidence is certainly legitimate and deserves due consideration, [while] the context in which it was procured cannot be entirely ignored" [TR 22]. Notably, the ALJ does not go that one step further and find that Dr. Shade's incontinence limitation is unreliable or otherwise rejected for this reason. Rather, after acknowledging the restroom break limitation, the ALJ does not further discuss it.

[5] The Commissioner points to the ALJ's discussion of Plaintiff's lack of treatment as further evidence the ALJ properly discounted the severity of Plaintiff's incontinence condition, arguing it was "reasonable to conclude that a claimant's allegations of disabling symptoms have been overstated when there are significant gaps in medical treatment" [Dkt. 18 at 6 & n.6] (citing *Palomo v. Barnhart*, 154 F. App'x 426, 430 (5th Cir. 2005); *Parfait v. Bowen*, 803 F.2d 810, 813-14 (5th Cir. 1986)). Even if true, the Commissioner's argument does not remedy the ALJ's failure to properly consider the medical evidence in the record, specifically Dr. Shade's opinion. Moreover, "[a] plaintiff may assert inability to afford treatment as a justifiable reason for noncompliance with treatment if (1) free community resources are unavailable for such treatment; (2) all possible resources and contacts with those resources have been explored; and (3) plaintiff's financial circumstances are documented." *Morris v. Colvin*, No. 4:14-CV-00690, 2015 WL

But the Commissioner fails to identify evidence in the record which supports Plaintiff's breaks are only needed at two-hour intervals or that "customary breaks" would account for Plaintiff's incontinence. *See Hamblen v. Colvin*, No. 3:12-CV-2009-BH, 2013 WL 4858750, at *11-14 (N.D. Tex. Sept. 12, 2013) (recommending remand after finding the ALJ impermissibly relied on her own medical opinions to find that the claimant's gastro-intestinal impairments had no effects on his ability to work); *Schaffer v. Astrue*, No. CIV.A. 09-1254, 2010 WL 1444867, at *11-18 (W.D. Pa. Apr. 9, 2010) (remanding where the ALJ concluded claimant could perform limited range of sedentary work that provided claimant with reasonable access to bathroom facilities, as this characterization did not fully account for claimant's urinary limitations resulting from tumor on her spine).

     The Court finds that while the RFC contains various limitations, none of them accommodate Plaintiff's incontinence; certainly, the ALJ's RFC makes no allowances for frequency and the opinion that Plaintiff would need to take excessive restroom breaks. The ALJ's determination that, while Plaintiff cannot perform any past relevant work, there is other work he can perform, is not supported by substantial evidence. The ALJ's ultimate conclusion that Plaintiff could work in sedentary jobs in the national economy fails to address Hearing testimony of the VE. Counsel for Plaintiff asked if a person could perform the alternative jobs with an additional incontinence-related limitation—where he "would have to leave his work space at least once every hour to go to the restroom for ten minutes"—specifically asking would "he be able to engage in these jobs at the competitive level?" The VE stated, "Not in my opinion" [TR 63]. *See Sanford*

---

12570837, at *7 (S.D. Tex. June 30, 2015). While the ALJ, citing SSR 18-03, concluded Plaintiff's "reported inability to afford medical care does not satisfy the criteria to be considered a justifiable cause for his failure to follow prescribed treatment" [TR 20], the record does show Plaintiff attempted to seek free community care with the help of a social worker and had exhausted temporary insurance [TR 50-52].

*v. Colvin*, No. CV 13-06333-JEM, 2014 WL 1660076, at *6-7 (C.D. Cal. Apr. 25, 2014) (finding remand necessary where ALJ disregarded Plaintiff's testimony about number of restroom breaks needed and omitted limitation regarding bathroom breaks notwithstanding VE testimony that such a limitation would preclude all work).

More specifically, at Hearing, the VE classified Plaintiff's past relevant work history, indicating that Plaintiff worked as a warehouse worker, DOT is 922.687-058, unskilled, SVP 2, medium; cleaner and preparer, DOT 721.687-010, unskilled, SVP 2, and medium; an electronics worker, DOT 726.687-010, unskilled, SVP 2 and light [TR 60]. The ALJ then presented the following hypothetical to the VE:

> For my first hypothetical, I would like for you to please consider an individual of the claimant's age, education, and prior work history. This first hypothetical individual can do the following. This person can lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently. The individual can stand or walk for two hours out of an eight-hour day. Can sit for six hours out of an eight-hour day. Can occasionally climb ramps and stairs, but no climbing of ladders, ropes, or scaffolds. The individual can occasionally balance, stop, kneel, crouch, and crawl. And for my first hypothetical, those are all those limitations. Would that individual be able to perform any of the claimant's past work?

[TR 60-61]. The VE responded that this hypothetical person could not perform any of Plaintiff's past work and would be restricted to sedentary work [TR 61]. The ALJ then presented the following hypothetical to the VE:

> So let me ask you my second hypothetical, and this person can lift, carry, push, or pull up to ten pounds occasionally and less than ten frequently. I'll read them all again. This first hypothetical individual can do the following. Standing or walking for two hours out of an eight-hour day. Sitting for six hours out of an eight-hour day. Occasionally climbing ramps and stairs, but no climbing of ladders, ropes, or scaffolds. The individual can occasionally balance, stop, kneel, crouch, and crawl. And there's one additional limitation, and that is if the individual requires the use of a handheld assistance device such as a cane for ambulation. And I assume the claimant's past work remains unavailable, and then I will ask you about other work in the national economy that this hypothetical individual could perform?

[TR 61-62]. The VE responded that this hypothetical person could not perform any of Plaintiff's past work but that there were jobs in the national economy that such an individual could perform, such as order clerk (sedentary, unskilled level, DOT 209.567-014, SVP 2), addresser (sedentary, unskilled level, DOT 209.587-010, SVP 2), and call-out operator (sedentary, unskilled level, DOT 237.367-014, SVP 2) [TR 62]. The ALJ then asked the VE "if the individual required immediate access to restroom facilities at the worksite, would that impact the availability of work?" [TR 62].[6] The VE responded that it would not impact the availability of the jobs she provided [TR 62]. Plaintiff's counsel then examined the VE, adding limitations related to Plaintiff's incontinence:

> Q. All right. And if he would have to leave his work space at least once every hour to go to the restroom for ten minutes, would he be able to engage in these jobs at the competitive level?
>
> A. Not in my opinion.

[TR 62-63]. Because the ALJ's error conceivably could have resulted in a different decision, the error is not harmless. Thus, the case should be remanded for further consideration. *See Kneeland*, 850 F.3d at 761-62 (5th Cir. 2017) (finding that the error was not harmless where the ALJ failed to address or properly consider an examining physician's opinion); *Crowley*, 197 F.3d at 199 (where the court found the plaintiff's incontinence to be "a nuisance that he can cope with, by use of undergarments designed for that purpose or through other means," the appeals court found "no evidence whatsoever in the record to support that conclusion. Consequently, we find that a remand is in order").

---

[6] Courts have found that a limitation in the RFC for ready or close access to a restroom is insufficient to account for a claimant's need to take frequent restroom breaks. *See e.g. Jeley v. Comm'r*, No. 2:17-CV-396, 2018 WL 286169, at *5-6 (S.D. Ohio Jan. 4, 2018), *report and recommendation adopted*, No. 2:17-CV-396, 2018 WL 2063870 (S.D. Ohio May 3, 2018) (vague limitation to readily accessible bathroom facility did not account for plaintiff's need to take frequent breaks in formulating the RFC); *Sherrill v. Comm'r*, No. 1:13-CV-276, 2014 WL 1338114, at *5-7 (S.D. Ohio Apr. 2, 2014), *report and recommendation adopted*, No. 1:13CV276, 2014 WL 1672926 (S.D. Ohio Apr. 28, 2014).

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's Decision should be **REMANDED** to the Commissioner of Social Security for further proceedings consistent with this opinion.[7]

**IT IS SO ORDERED**.

**SIGNED this 10th day of August, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

[7] To be clear, the undersigned has not reweighed the evidence and does not suggest that Plaintiff is or is not disabled. Further analysis on remand may well result in the same conclusion already reached by the ALJ that Plaintiff is not disabled. However, a remand is warranted so that a fact finder can consider the evidence reflecting Plaintiff's limitation(s) related to incontinence and determine whether the same would have any vocational impact on Plaintiff's RFC or employability in the national/regional economy.